UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA :
: No. 3:
v. :
:
JONATHAN OLIVETTI :
:
Defendant :

INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

COUNT 1
Wire Fraud
18 U.S.C. § 1343

I. Introduction

At times material to the Information:

Relevant Individuals and Entities

1. Defendant JONATHAN OLIVETTI resided in or about Philadelphia, Philadelphia County, within the Eastern District of Pennsylvania.

2. Olivetti Law, LLC was a limited liability company incorporated in the Commonwealth of Pennsylvania, with a business address located in Philadelphia, Philadelphia County, within the Eastern District of Pennsylvania. Olivetti Law, LLC was incorporated

1

on or about October 3, 2013, and JONATHAN OLIVETTI was listed as the sole organizer for Olivetti Law, LLC.

3. OLIVETTI was the sole employee of Olivetti Law, LLC.

4. The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA included maintaining and strengthening the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. As part of those efforts, the SBA enabled and provided for loans with government-backed guarantees to small business owners through financial institutions and other lenders.

5. Lender #1, was located in Fort Lee, New Jersey. It was one of over 1,500 privately funded non-bank lenders approved by the SBA to process Paycheck Protection Program ("PPP") loans.

## The Paycheck Protection Program

6. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 that provided emergency financial assistance to millions of Americans suffering financial difficulties from the economic impact of the COVID-19

pandemic. One source of relief provided by the CARES Act was the authorization of approximately $349 billion in forgivable loans to small businesses, through the PPP. In April 2020, Congress authorized an approximate $310 billion of additional PPP funding.

7. PPP loan proceeds were authorized to be used for businesses' employee payroll, mortgage interest, lease, and utilities expenses. The principal amount of and interest on a PPP loan was entirely forgivable if the business spent the loan proceeds on those authorized expenses within a designated period of time, and also spent a certain percentage of the PPP loan proceeds on payroll expenses.

8. To obtain a PPP loan, a qualifying business was required to submit a loan application signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and to make affirmative certifications, in order to be eligible to obtain the PPP loan.

9. In the PPP loan application, the applicant (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses; and (2) number of employees. Those figures were used to calculate the amount of money that the

small business was eligible to receive through the PPP. An applicant also was required to provide documentation showing its payroll expenses.

10. Although the SBA oversaw the PPP, PPP loan applications were processed by participating lenders, including Lender #1, who received and processed PPP loan applications and supporting documentation. If a PPP application was approved, the participating lender funded the PPP loan through its own monies, which were 100% guaranteed by the SBA. Data from the PPP loan application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the PPP loan.

## The Economic Injury Disaster Loan Program

11. Another source of relief provided by the CARES Act was the expansion of an existing disaster-related program – the Economic Injury Disaster Loan ("EIDL") – to provide low-interest financing (including forgivable $10,000 advances) to small businesses and other eligible entities. The CARES Act authorized the SBA to provide EIDL loans to eligible small businesses experiencing substantial financial disruption resulting from the COVID-19 pandemic.

12. To obtain an EIDL loan, a qualifying business was required to submit an application directly to the SBA and provide information about the business's operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDL loans for COVID-19 relief, the 12-month period was the 12-month period from January 31, 2019, to January 31, 2020. The applicant was also required to certify that all of the information in the application was true and correct to the best of the applicant's knowledge.

13. EIDL loan applications were submitted directly to the SBA and processed by the agency with support from a government contractor. The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods sold. Any funds issued under an EIDL loan were issued directly by the United States Treasury.

14. As a general matter, EIDLs carried interest rates of 3.75% for for-profit corporations and 2.75% for non-profit corporations. The first payment on an EIDL loan was deferred for 12 months.

15. EIDL proceeds could only be used to pay fixed debts, payroll,

accounts payable and other bills that could have been paid had the disaster not occurred; however, such loan proceeds were not intended to replace lost sales or profits or for expansion of a business. Moreover, EIDL proceeds could not be used to "[r]efinance indebtedness which you incurred prior to the disaster event." 13 C.F.R. § 123.303(b)(1).

## II. Object of the Scheme to Defraud

16. The object of the scheme was for JONATHAN OLIVETTI to enrich himself by fraudulently obtaining funds, including two PPP loans of approximately $20,800 each and two EIDL loans of approximately $62,500, through misrepresentations and false documentation.

## III. Statutory Allegations

17. Between on or about June 18, 2020 and on or about January 19, 2021, within the Eastern District of Pennsylvania and elsewhere, the defendant,

JONATHAN OLIVETTI,

having devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and artifice to defraud, transmitted and caused to be transmitted by means of wire communications in

interstate commerce certain writings, signs, signals, pictures, and sounds; namely, PPP Loan applications submitted by the internet and interstate wires to Lender #1 and EIDL loan applications submitted by the internet and interstate wires.

### IV. Manner and Means of the Scheme

It was part of the scheme and artifice to defraud that the defendant employed the following manner and means:

18. On or about June 19, 2020, the defendant used the internet and interstate wires to submit and cause to be submitted to Lender #1, a PPP loan application on behalf of Olivetti Law, LLC. The application contained material misrepresentations, including that Olivetti Law, LLC had a payroll of $8,333 per month, when in fact the payroll was significantly less. The application certified that the information provided was true, under penalty of law.

19. In reliance on the fraudulent misrepresentations in the PPP loan application, Lender #1 distributed approximately $20,800 in PPP loan funds to OLIVETTI.

20. On or about January 19, 2021, the defendant used the internet and interstate wires to submit and cause to be submitted to Lender #1, a PPP loan application on behalf of Olivetti Law, LLC. The

application contained material misrepresentations, including that Olivetti Law, LLC had a payroll of $8,320 per month, when in fact the payroll was significantly less. The application certified that the information provided was true, under penalty of law.

21. In reliance on the fraudulent misrepresentations in the second PPP loan application, Lender #1 distributed approximately $20,800 in PPP loan funds to OLIVETTI.

22. Between approximately June 2020 and February 2021, the defendant used the internet and interstate wires to submit and cause to be submitted to the SBA two EIDL loan applications each seeking approximately $62,500 on behalf of Olivetti Law, LLC. The applications contained material misrepresentations and ultimately were not approved by the SBA.

All in violation of Title 18, United States Code, Section 1343.

JOHN C. GURGANUS
United States Attorney

By: *Jenny P. Roberts*
JENNY P. ROBERTS
Assistant United States Attorney

Date: 12/13/2021